BOND (JOHNSON v.). See Case No. 7,374.

---

## Case No. 1,623.

### BOND v. ROSS.

[1 Brock. 316.][2]

Circuit Court, D. Virginia. Nov. Term, 1815.

DEED OF TRUST—RECORDING.

The fair construction of the act of assembly of Virginia, passed in December, 1792, for regulating conveyances, requires, that a deed of trust, or a mortgage on personal estate, should be recorded in the general court, or, in the court of the district, county, city, or corporation, in which the grantor resided, and, consequently, a

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by John W. Brockenbrough, Esq.]

deed of trust, or mortgage on slaves, which was recorded only in the court of the county, in which the slaves were usually employed, (the grantor residing in a different county,) was held void, as to a creditor.

[Clayborn v. Hill, 1 Wash. (Va.) 177, followed.]

In equity. On the 6th day of June, 1804, Phineas Bond, as attorney for the creditors of Ezekiel Edwards, a British subject, obtained a decree in this court, for the sum of $180,884 70, against David Ross, payable in installments, viz.: $10,000, payable on the first day of October following, $10,000 on the first day of January, 1805, and $16,666 66, payable semi-annually, until the whole decree should be fully satisfied and paid off. On the 21st day of October, 1807, the said Ross executed a deed of mortgage to William Mewburn and others, covering a very large number of slaves, and other personal property, to secure certain debts due from the mortgagor, to the mortgagees, which slaves were usually employed on an estate, called the "Oxford Iron Works," belonging to said Ross, in the county of Campbell, and state of Virginia. This deed was executed in the city of Richmond, where David Ross then lived, and was recorded in the county court of Campbell. Prior to the institution of this suit, but several years after the execution of the deed of mortgage, a portion of the instalments having been paid, but the residue having fallen due and payable, amounting to a very large sum, under the decree of the 6th of June, 1804, the plaintiff Bond, sued out a writ of fieri facias, against the goods and chattels of David Ross, for the sum remaining unpaid, which was executed upon the slaves covered by the mortgage deed to Mewburn and others. The slaves were exposed to sale, and the sale was forbidden by Mewburn. The plaintiff, Bond, then filed his bill in equity in this court, making the parties to the mortgage deeds, parties defendants to the suit, to set aside the deed of mortgage aforesaid, as "fraudulent and void as to creditors, it not having been recorded in the general court, or the court of the district or county, in which the said Ross then resided, and continues to reside, he having been, at the date of the deed, and ever since, an inhabitant of the city of Richmond." The defendant Mewburn, in his answer, admits the facts recited in the plaintiff's bill to be true, but insists that the deed of mortgage was properly recorded in the county court of Campbell, where the slaves and other property thereby conveyed were, at the time of executing and recording the same. The same position is taken by the other mortgagees in their respective answers. [Decree for complainant.]

The following opinion was delivered by MARSHALL, Circuit Justice. This case depends on the construction of the act of assembly, for regulating conveyances, which was passed in the year 1792.[2] It is with much repugnance that this court proceeds to decide any cause dependent on a statute of the state, which is extremely vague in its expression, and the construction of which does not appear to have been fully settled by the state tribunals. If the means of avoiding it were perceived, those means would be gladly embraced. But were this cause to be postponed, until the statute on which it depends should be expounded by the judiciary of Virginia, the postponement might be indefinite, as it is not understood, that the question is before any of the courts of the state. It is, therefore, the duty of this court to proceed. The first section of the act relates exclusively to lands, and declares the conveyance to be void, as to subsequent purchasers not having notice thereof; and as to all creditors, unless it shall be recorded in the general court, or court of the district, county, or corporation, in which the lands lie. The second section relates exclusively to covenants, or agreements made in consideration of marriage, and declares, that they shall not be valid against a subsequent purchaser without notice, or against any creditor, unless recorded, if land be charged, in the general court, or court of the district, county, or corporation, in which the land lies; or, if personal estate only be charged, in the court of the district, county, or corporation, in which the party, bound by such covenant or agreement, resides.[3] The fourth section relates to conveyances generally, and declares all deeds of trust, and mortgages, whatsoever, to be void as to all creditors and subsequent purchasers, unless they shall be proved and recorded according to the directions of the act. This section governs the case, and the question to be determined is, in what court is a mortgage of personal property alone to be recorded? The words of the act are, that such mortgage shall be void, unless recorded according to the directions prescribing the court in which it is to be recorded. The directions given, respect only those conveyances which comprehend lands, or those which are made in consideration of marriage.

---

[2] See edition of the Laws of Virginia, 1803, c. 90, p. 156; and 1 Rev. Code 1819, pp. 361–371, c. 99.

[3] But by a subsequent act, all deeds respecting the title of personal chattels, which the law requires to be recorded, must be recorded in that county or corporation "in which such property shall remain." Act Feb. 24, 1819; 1 Rev. Code, p. 364, c. 99, § 11. In the construction of this act, the court of appeals (Brockenbrough, J., delivering the opinion of the court,) held: that where a mortgage of slaves "remaining" in one county, was recorded in the county in which the mortgagor resided, and the slaves were subsequently removed to the county of the mortgagor's residence; 1. That the deed was void before the removal of the slaves. 2. That the removal of them, afterwards, to the county in which the deed was recorded, did not give life and energy to a deed which was void before. Lane v. Mason, 5 Leigh, 520.

In the multiplicity of difficulties growing out of this strange negligence of the legislature, it is not surprising that it should be doubted, whether a mortgage containing personalties only may not be recorded in any court whatever. Such a deed being declared to be void, unless recorded according to directions which the law does not give, would furnish arguments of almost equal plausibility for the opinion, that there was no restriction whatever on the court in which it might be recorded, and for the opinion, that it could not be recorded in any court, but must be for ever void, as to creditors and subsequent purchasers without notice. Since, however, the obvious intention of the act is to preserve the validity of a mortgage of a personal thing, and at the same time to prescribe some court, in which it may be recorded, so as to give notice to the world that the property is incumbered, the court is of opinion, that the law must, if possible, be so construed as to effect this intention. It must be effected, too, with the least possible violation to the words of the legislature. As neither the first nor second section of the act, gives directions respecting the court in which a deed, mortgaging personalties only, shall be recorded, and as the fourth section must be understood to refer to those sections only, it becomes necessary to apply their provisions to such deed, in such manner as to effect, in the most rational and convenient way, the intention of the law.

It has been contended, that, as in a case where personal property is conveyed with real property, the court of the county, in which the land lies, is that in which the deed must be recorded, it would be reasonable to require, that the county in which the personal property resides, or is commonly found, should furnish the court in which a deed for such property would be looked for. For a moment, I was struck with this argument, which seemed to derive weight from the consideration, that, had the Oxford Iron Works themselves, been included in this mortgage, it ought to have been recorded in the court for the county of Campbell, and a subsequent purchaser or creditor, asserting a claim to the slaves in question, would have been bound by such lien upon them, recorded in that court. Since the slaves in question, if mortgaged, together with the lands they worked, would have passed by a deed recorded in Campbell, it seemed reasonable, that creditors should search the records of that court, for any incumbrance on them. But a very slight examination was sufficient to show the fallacy of this idea. If, instead of the Oxford Iron Works, an inconsiderable tract of land, in the most remote part of the state, had been included in the mortgage, the law requires that the deed should be recorded in that county. It is, then, impossible to argue from the court in which a deed for personalties, when mixed with land, is to be recorded, to the court in

which a deed for personalties alone, must be recorded. The argument in favour of regulating the place of recording the deed by the locality of the personal thing it may convey, if to be maintained, must rest on other grounds. The argument urged, by the counsel for the defendant, on the reasonableness of considering the residence of the property mortgaged, as giving the place in which the deed shall be recorded, appears to me to be very much weakened by the consideration, that, in contemplation of law, personal property has no locality, and that, in fact, it has none that is permanent.

To pass over property, the tracing of which would be much more difficult, and to confine my observations to slaves alone, where should a mortgage, on slaves usually hired out, be recorded? Where, if the slave be hired sometimes in one county, sometimes in another? If it be said that, in such case, the domicil of the master gives locality to the slave, the answer is, that if this be true, all the locality which a slave can legally have, is derived, not from his own casual residence, but from the residence of his master, on whose will, the place he may at any time occupy, must entirely depend. The slave, shifted, according to the caprice of the master, from plantation to plantation, or hired, sometimes in one county, and sometimes in another, has no place of residence, sufficiently certain and fixed, to furnish a safe guide for the court, in which a lien upon him should be recorded. In contemplation of law, therefore, and, in fact, slaves, and every personal chattel, must be considered as transitory; and being fixed to no place, they adhere to the person of the owner.

The second section of the act, directs the court in which a covenant, or agreement, in consideration of marriage, containing personal estate only, shall be recorded. This is to be in the court of the district, county, or corporation, in which the party resides. This section, it has been already said, is not, in its terms, applicable to conveyances not made in consideration of marriage. But no reason is perceived for directing a lien of personal property, remaining in possession of the grantor, to be recorded in one court, if it be made in consideration of marriage, and in a different court, if it be made to secure the payment of money. The declaration, that deeds of personal property, made in consideration of marriage, should be recorded in the court of the district, county, or corporation, in which the grantor resides, would, certainly, indicate the opinion of the legislature to be, that a lien on the same property, made on any other consideration, should be recorded in the same court. In the one case, and in the other, the object of the record is to give notice to the world that the lien exists, and it would seem reasonable that, in each case, the same notice should be given. An argument entitled to great re-

spect has been urged against this construction. It has been said that the legislature certainly intended to provide for every case, and that the law ought to be so construed as to reach every case. That under this construction, there would be no court, in which a deed for personal property, given by a non-resident of the state, could be recorded. This objection to the construction contended for by the plaintiff is certainly not a light one.

The 5th section of the act provides, that deeds executed by a non-resident of the state, may be acknowledged or proved in a manner prescribed by that section, and recorded in the proper court. This proves that deeds executed by non-residents were in contemplation of the legislature, and such deeds were to be recorded somewhere. It is true, the section, in terms, applies only to deeds conveying land, but there would be nothing extraordinary in extending it, by construction, to chattels also. If this act had been drawn in such explicit terms, as to provide plainly, in other instances, for the cases it contemplates, the difficulty respecting a mortgage for a personal chattel executed by a non-resident, would induce the court to struggle for a construction, which would substitute some other place than the residence of the grantor, as that which should designate the court in which the deed should be recorded. But this law is drawn, in several of its enacting clauses, in such terms as to leave it impracticable to effect the obvious intention, without aiding the words. I very much incline to the opinion, that a deed for personal chattels executed by a non-resident, would be valid if recorded in the general court.[4]

It appears to be the general policy of the law, to make the general court a place where all incumbrances on property may be found. For this reason, a memorial of the deeds recorded in every county or district, is to be transmitted annually to that court. It is also a court of record which is common to the whole state. Its jurisdiction in this respect is universal. It is empowered to receive probate of all deeds whatever. Any deed, comprehending personalties or realties, may be recorded in that court. It is impossible to find a motive for excluding a deed, mortgaging a personal chattel, without land. The exclusion cannot have been intended. If, in such a case, a construction, which would give validity to a deed recorded in that court, can be supported, it ought to be supported. The words are, "no covenant, &c., shall be good unless acknowledged, &c., if lands be charged, before the general court, or the court of that district or county in which the land or part thereof lieth, or if personal estate only be settled, &c. before the court of

that district, county, city, or corporation, in which the party shall dwell." The mind of the legislature was directed to the designation of the particular court among those whose powers were limited, in which the deeds described might be recorded, and, therefore, it might not be deemed necessary, after naming the general court in the first instance, to repeat that court in the record. The word general court may be understood, and the act construed as if it had been again inserted. There are certainly few cases in which this freedom of construction can be justified. If any act will justify it, it is the act for regulating conveyances.

Although I at present rather incline to construe the act, independent of precedent, so as to consider it as requiring, that a deed of mortgage for personal estate only, must be recorded in the general court, or court of the district, county, or corporation in which the grantor resides, I am not sure that I should give this opinion were it not supported by the case of Clayborn v. Hill, 1 Wash. [Va.] 177. That case does not decide that a deed of mortgage for slaves, recorded in the county where the slaves happen corporeally to reside, is void, but it decides that such a deed, recorded in the county where the grantor resides, although the slaves be at the time on a plantation in a different county, is good. Either, then, such deed may be recorded indifferently in the one county or the other, or it can be recorded only in the general court, or court of that district, county, or corporation in which the grantor resides. I can perceive nothing in the act which indicates an intention to allow this alternative, and the policy of the law does not appear to require or admit of it. The decision of the court, on the authority of this case, is that this deed is not recorded in the proper county.

NOTE [from original report]. The decree rendered in this cause pronounced the deed of mortgage to Mewburn and others "void as to creditors, it not being duly recorded; and that, therefore, a writ of fieri facias sued out by a creditor of the said Ross, might lawfully be levied on the slaves and other property conveyed by the said deed."

---

[4] By the act of 1818 (see 1 Rev. Code 1819, c. 67, § 11), it is declared that no deeds of real or personal property executed subsequent to the 1st day of November, 1814, shall be admitted to record in the general court.

